## EXPOSING COMMODITIES FOR SALE IN UNSEALED MEASURES.

Common Pleas Court of Cuyahoga County.

### C. W. GATES v. THE CITY OF CLEVELAND.

Decided, March 11, 1911.

*Weights and Measures—Constitutionality of Ordinance Requiring that Measures be "Sealed"—Evidence of Capacity of Measure in Pounds Not Admissible where the Charge is Exposing for Sale—"Heaped" and "Stroked" Measure—Sealer May be Mandamused to Seal Correct Measures—Sections 3651, 6416, 6417 and 4322.*

1. An ordinance making it "unlawful * * * to expose for sale any commodity, article or articles which are commonly sold by measure, in any measure, utensil or receptacle which is not tested, marked and sealed" by the city sealer of weights and measures, is within the power vested in municipalities by Section 3651, General Code, "to regulate the weighing and measuring of hay, wood and coal and other articles exposed for sale," and is a reasonable exercise of the police power of the state.

2. Keeping turnips in boxes used as measures is an exposing for sale by measure within the meaning of an ordinance making it unlawful "to expose for sale" by measure not sealed.

3. In a prosecution under such an ordinance the gravaman of the offense is the fact that the box was not sealed by the city sealer, and not that the measure did not contain sufficient cubic capacity; and it follows, therefore, that evidence that a former sealer approved boxes of like size and character, or that the boxes contained the requisite number of pounds for the measure sold, should be excluded.

4. Turnips are articles usually sold by heaped measure as defined by Section 6416, General Code, and a box or crate not containing when stroked a heaped bushel of turnips is not a lawful measure for turnips, notwithstanding it contains more cubic inches than is required for dry measure by Section 6417.

5. Mandamus will lie to compel a city sealer to seal measures which are in accord with the proper standards.

*E. J. Pinney,* for plaintiff in error.
*City Solicitors,* contra.

FORAN, J.
Error to Police Court.

The plaintiff in error was arrested upon an affidavit of date January 3, 1911, which charged that he had unlawfully, on said date, exposed for sale turnips in a receptacle not tested, marked and sealed by the city sealer.  Upon trial of the cause, he was found guilty by the police court, and prosecutes error to this court, and alleges as assignments for error that the ordinance, which is known as Section 1420 of the revised ordinances of the city of Cleveland, under which said affidavit was drawn, is unconstitutional by reason of the fact that it is unreasonable and arbitrary; that is, he claims that the enactment of the ordinance and its enforcement by the city are an unwarranted and unjustifiable exercise of the police power of the state.

The police power is an authority conferred by the American constitutional system upon the individual states through which, *inter alia*, they are enabled to adopt such and secure generally the comfort, health and prosperity of the state by preserving public order, preventing a conflict of rights and the common intercourse of the citizens, and securing to each uninterrupted enjoyment of all the privileges conferred upon him by the laws of the country.

It is universally recognized that, under this power, markets may be regulated, special places assigned for the vendors of special articles, licenses granted, weights and measures established, and merchants and dealers compelled under penalty, to comply with all such regulations.  The regulations which may be adopted and enforced under this power are necessarily of such intricacy as to pervade all conditions of business and society. In every civilized community it is a well-established and recognized principle that every right is limited by a duty, and the circle of rights can be no greater or broader than the circle of duties.

Established weights and measures are indispensable instrumentalities in all the variety of exchanges which constitute commerce; and as the usefulness of any system of weights and measures depends on the unvarying accuracy of its determinations, it has been a part of the public policy of every organized community, from the earliest period of civilization, to regulate such system by laws providing carefully constructed standards

to which the weights and measures in actual use among the people shall be required to conform; and also providing for some constituted authority to determine whether the weights and measures in use conform to the established standards.

As early as 1623 an order of the General Assembly of the Colony of Virginia directed that no weights or measures should be used but such as should be sealed by officers appointed for that purpose. The other colonies, and subsequently the states of the American Union, adopted similar provisions or laws. These regulations will be found to be varied and far reaching, and even apparently confiscatory in character, without, however, actually conflicting with the great constitutional principles which have been finally settled for the defense of private rights and property.

The ordinance under which the plaintiff in error was arrested and prosecuted provides, among other things, that it "shall be unlawful for any person to sell any article or commodity which is commonly sold by weight or measure, unless such article or commodity first, and at the time of such sale or purchase, be weighed or measured by weights, measures, scales, beams, steelyards, platform scales or other machinery, untensils or receptacles tested, marked and sealed by the city sealer."

The affidavit upon which the plaintiff in error was arrested charges, as above, that on or about the 3d day of January, 1911, at the state and county, W. C. Gates did then and there unlawfully expose for sale turnips in a receptable not tested, marked and sealed by the city sealer.

The ordinance in question, Section 1420, also provides that "it shall be unlawful for any person to expose for sale any commodity, article or articles which are commonly sold by measure, in any measure, utensil or receptacle which is not tested, marked and sealed as aforesaid."

It is claimed by counsel that this ordinance undertakes to regulate, not the manner in which the goods are sold, but the manner of exposing them for sale. And it is said that, if the vendor should bring his commodities to the market in a wagon and expose them for sale in that manner, and, when the sale is made, then proceed to place them in a bushel basket or whatever

the purchaser desires, that he would be guilty of a violation of this ordinance; that the mere exposition of the commodities in the wagon would be an exposition of them for sale, although there was no sale consummated; that is, the claim is, that the ordinance seeks to control and regulate the method of merely exposing for sale, even though no sale has been made; and, for this reason, it is claimed that the ordinance is unconstitutional because it is unreasonable and arbitrary.

The grant of power from the state to the municipality, by virtue of which this ordinance was enacted, will be found in Section 3651 of the General Code, and this section gives a municipal corporation the power ''to regulate the weighing and measuring of hay, wood and coal and other articles exposed for sale.''

It will be seen that in the statute or grant of power the words ''exposed for sale'' are a part of the grant of power; that is, that the city has the right to regulate the sale of articles which are exposed for sale. Surely it must be admitted, if the ordinance in question is unconstitutional, then the statute conferring upon the municipality the power to regulate articles exposed for sale is also unconstitutional.

As early as March, 1834, the General Assembly of the state of Ohio passed an act to incorporate and establish the city of Cincinnati; that is, it gave to the city of Cincinnati a charter, under the Constitution of 1802, which provided that municipalities might be so chartered. The sixth section of this charter, which will be found in the Laws of Ohio, Volume 32, page 247, provides that the city council may appoint constables of the markets, and weighers of hay, measurers of wood and coal, and other city officers, whose appointment or election shall be necessary for the good government of the city and the due exercise of its corporate powers.

Section 8 of the same charter provides, *inter alia,* that the city council ''shall have power from time to time to make and publish all such laws and ordinances as to them shall seem necessary to provide for the safety, preserve the health, promote the prosperity, and improve the morals, order, comfort and convenience of said city and the inhabitants thereof.''

Under this grant of power, it was held, in the case of *Huddle-son* v. *Ruffin,* 6 O. S., 604, that the city council of Cincinnati had the power to appoint an inspector or sealer of weights and measures, and to enforce by fine the use of weights and measures sealed by such inspector. And in the opinion of Judge Swan it is said (page 607), that, as incident and necessary to the appointment of such sealer of weights and measures, and to carry out the manifest object of the law in authorizing the creation of such a municipal officer, the general council might prescribe his duties, under the general authority given by the charter, in section sixth above quoted. And further the court says, same page:

"We are of the opinion that the ordiance comes within the scope and object of said legislation, as given by Section 8 of the charter, and is not in conflict with any general law."

If we examine this charter, or the language used in Sections 6 and 8, and compare that language with the broad and general power given by Section 3651 of the Revised Statutes, we are forced to admit that if the city council of the city of Cincinnati had, under its charter, the power to appoint an inspector or sealer of weights and measures, and to enforce by fine the use of weights and measures sealed by such inspector, then surely the city council of the city of Cleveland have the right, by ordinance, to declare that any articles commonly sold by measure should not be exposed for sale unless the measure or receptacle in which they were so exposed had been tested, marked and sealed by the city sealer.

The evidence discloses that the plaintiff in error was charged with exposing for sale turnips in an unsealed box or receptacle.

It may be admitted that, so far as the questions here involved are concerned, the box had a capacity of 2180 cubic inches, being about thirty inches in excess of the cubic contents of a bushel as defined by the statutes of the state of Ohio. The record does not disclose, however, whether turnips are an article or commodity usually sold by heaped measure as defined by Section 4441, Revised Statutes.

It is claimed by the plaintiff in error that the boxes contained a bushel, and more by struck measure; that is, the box, if a

straight edge was passed across the top thereof, had a capacity of 2180 cubic inches. It is more than probable that turnips, owing to their semispherical shape and large size, are usually sold by heaped measure as defined by Section 4441, Revised Statutes. If so, it is quite evident that the boxes would not contain, if a straight edge were passed across the tops, a heaped-measure bushel.

It is also admitted that the city sealer refused to seal these boxes and similar boxes, because, in his opinion, the boxes were too small, and did not conform to the standard used by his department, which, it appears, required a box or receptacle having a cubic capacity of 2464 cubic inches—evidently indicating that turnips are usually sold by heaped measure, or at least the city sealer required that capacity as a standard for a bushel of turnips, struck measure.

The contention of counsel that the ordinance undertakes to regulate, not the manner in which the goods are sold, but the manner of exposing them for sale, is not well taken; for the ordinance explicity provides that "it shall be unlawful for any person to expose for sale any commodity, article or articles which are commonly sold by measure," etc., and an examination of the record clearly shows that the boxes kept by the plaintiff in error were kept as a measurer of the commodity he was selling, that is, of the turnips. He says himself, page 18 of the record, that at the time of his arrest he was loading up his empty boxes on a truck to put on the wagon. That he had all his turnips boxed up, that is, that the turnips he had were in boxes; and when it is remembered that these boxes had a cubic capacity of 2180 inches—a little in excess of a bushel as defined by our statutes —it will be seen that these turnips were kept in boxes as measurers of quantity, and that his conduct fell within the inhibition of the ordinance, which provides that "it shall be unlawful to expose for sale any article or commodity commonly sold by measure," etc. He was evidently exposing the turnips for sale by measure. The record clearly discloses this fact.

As illustrating the far-reaching character of these regulations, which have been sustained by our courts, a single case will suf-

fice. The city of Chicago quite recently passed an ordinance requiring that all loaves of bread offered for sale be so labeled as to show the weight of the loaf and the name of the maker. A man named Schmidinger was arrested for violation of this ordinance, and it was contended that the ordinance was unreasonable, because it did not permit loaves to be sold by special contract, other than those of the weights fixed, though there was a demand in the city of Chicago for loaves of other weights; and for the further reason that it could not be complied with without great loss to bakers, because of evaporation of weight of the loaves after leaving the oven, and that it was impossible to correctly determine what this evaporation might be. And it was further contended that it was unreasonable because the articles entering into the composition of bread changed in value from time to time, and that it would be impossible for bakers to anticipate these changes in the value of flour, salt and other articles entering into the composition of bread. But in the case of *Chicago* v. *Schmidinger,* 243 Ill., 167, this ordinance was declared to be valid and a reasonable ordinance, that is, a reasonable exercise of the police power of the state. And in the same case, 245 Ill., 317, it was held that the provisions of the ordinance did not contravene the constitutional provisions of the United States or the constitutional provisions of the state of Illinois relating to private rights and property.

Surely if this ordinance was a reasonable exercise of the police power, the ordinance under which the plaintiff in error in the case at bar has been prosecuted can not be said to be unreasonable.

As indicating the extent to which other courts have gone in upholding regulations of this kind, it may be stated that a seller of meats in the state of Massachusetts who has not his scale sealed by the sealer of the town of his residence can not recover the price of the meat sold, although he did have his scales sealed in another town. See *Smith* v. *Arnold,* 106 Mass., 269.

Under an ordinance of the District of Columbia, a vendor of milk claimed that he measured his milk in 40-gallon cans, and then decarted the milk into smaller bottles, not as measures, but as a means of distribution. This was held to be insufficient to show that the bottles were not measurers in contemplation of

law. This case will be found in 21 Appeals, District of Columbia, at page 395.

Upon the trial of the case at bar the plaintiff in error sought to show that the boxes he was using, that is, the boxes in which the turnips were exposed for sale, were of a size and character that the city sealer of a former administration agreed to seal, or in fact did seal or attest and mark as correct. This evidence was excluded, and the exclusion of the evidence is an assignment for error.

A sufficient answer to this contention would be to say that the box or measure was not wrong or defective because of its cubic capacity in inches, but because it was not certified to as being correct and right by the city sealer. All public officers are presumed to do their duty; and that this elementry presumption of law applies to a city sealer is indicated in the case of *Finch* v. *Bartley*, 87 Ga., 393. It may be said, however, that the record does not disclose that the city sealer of a former administration required that the boxes, or the commodity contained in them, should be sold by heaped measure, as provided by Section 4441, Revised Statutes. By heaped measure is meant that the commodity shall be heaped up in a conical shape in the receptacle until it will hold no more of that commodity. The gravamen of the offense is not that the box or measure did not hold or was not of sufficient cubic capacity to hold a bushel, but it consists in the fact that the box or measure did not have upon it a test brand or mark of the city sealer, as required by the ordinance. We find no error in the exclusion of this testimony.

Section 7968 of the General Code provides that the state sealer shall, upon application, furnish the city sealer copies of the original standards in his possession, that is, the standards adopted by the state; and Section 1536-673, Revised Statutes (Bates), provides that the city sealer "shall compare all weights and measures which are brought to him for that purpose, with the copies in his possession; and when such weights and measures are made exactly to agree with said copies, he shall seal and mark such weights and measures."

It will be seen that the city sealer is not required to seal or mark the weights and measures that are brought to him unless

they are made exactly to agree with the copies received by him from the state sealer. If they do not so exactly agree with the copies in his possession, he may refuse to seal and mark them.

Certainly the city sealer has the right and the power to determine whether the weights and measures brought to him are made exactly to agree with the copies in his possession; and therefore it can not be said that his duties in this respect are wholly ministerial. His powers in this respect necessarily are and must be largely discretionary. Besides, the ordinance of the city of Cleveland, passed in pursuance of the general grant of power given it by Section 3651 of the General Code, gives to the city sealer large discretionary powers, and these powers are essentially necessary to the proper and efficient performance of his duties. To deny him such powers would render it exceedingly difficult for him to enforce the laws and ordinances regulating weights and measures, and protect the people from the imposition and fraud these laws and ordinances seek to prevent and prohibit.

If the contention of the plaintiff in error is, that the boxes used by him actually conformed to the standard required by the state for bushel measure, and that there devolved upon the city sealer, upon request to stamp and seal the same, a plain, positive, legal duty, not ministerial in its nature, or calling for the use of discretion, nor the exercise of official judgment, his performance of such duty, upon his refusal, could be enforced by mandamus, in the absence of any other means of relief (*State, ex rel, v. Moore*, 42 O. S., 103). If, on the other hand, it is admitted that the duties of the city sealer are largely discretionary, the writ of mandamus, while it may not issue to control the discretion, will issue to compel the exercise of it by the city sealer (*Lake v. Ashtabula County*, 24 O. S., 393; *State v. Harris et al*, 17 O. S., 608, 616). The writ also lies against an officer vested with discretionary power who wholly refuses to perform his duty; as well as against an officer who refuses to perform a ministerial duty. *Barnet v. Portage County*, 12 O., 54.

So that it will be seen the plaintiff in error was not without remedy if his contention is correct that the boxes he used as bushel measures conformed exactly to the standard required by law. Good citizenship, therefore, required of him compliance

with the requirements of the city sealer or the enforcement of his rights by mandamus.

Again, as indicating that the plaintiff in error did not intend to commit an offense when he used the measure in question, this question was asked: "Q. In using that box, did you believe that you had a right to have it sealed?" That is, the contention of the plaintiff in error was, that because the city sealer of a former administration had said that these boxes might be sealed, he therefore believed he was justified in using them as measurers of quantity, or as bushel measures. And it is said that because this question was excluded, or the answer to it excluded, that the court committed error. In the case of *U. S. v. Anthony*, 11 Blatch., 200, it appears that Miss Anthony honestly believed that she had a right to vote, and she had been so informed by some of the best legal advisers in the United States; and, therefore, when she voted or attempted to vote, there was no intent to commit a crime; but it was held that the intent consisted in knowingly voting. And so in this case the intent consists in exposing turnips for sale in a measure or box or receptacle that was not properly sealed and stamped by the city sealer.

Again, one H. F. Chester, who appeared as a witness for the plaintiff in error, was asked how many pounds of potatoes the box in question would contain. The answer to this question was excluded; and plaintiff in error says that if the witness had been permitted to answer, he would have said that it contains sixty pounds rounding measure. The support of this inquiry evidently was to convey the impression that, because the box would contain sixty pounds of potatoes rounding measure, it would also contain sixty pounds of turnips rounding measure. The statutes of Ohio provide that a bushel of turnips shall consist of sixty pounds, the same being true of a bushel of potatoes. But why potatoes in this question? Why was the question not (not how many pounds of potatoes the box would contain, but), "how many pounds of turnips would the box contain?" It is well known, and may be so judicially noticed, that turnips are much larger than potatoes, and when placed in a box or basket, by reason of their spherical and semi-spherical shape and their much larger size, there would be more interstitial space in the

basket or box than there would be if it were filled with potatoes. And it is quite reasonable to presume that a box filled with turnips round measure would not weigh sixty pounds; and, besides, it is also well known that turnips are more fibrous than potatoes, and, bulk for bulk or quantity for quantity, would weigh less.

We find no error in this record, and the case will be affirmed and mandate issued to carry the same into execution. To which plaintiff in error excepts.